IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAUL SEEGAR AND JENNIFER SEEGAR, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | C.A. No. 13-2030-LPS |
| | : | C.A. No. 13-2031-LPS |
| THOMAS P. ANTICOLA, PETER LANE, EKL LEASING CORP. and/or EKL LEASING, INC., and AERO WAYS, INC. | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM ORDER**

These two related cases arise out of an airplane accident that occurred in Pennsylvania in 2011. Pending before the Court are two motions in each of the two cases: a motion to dismiss by certain defendants who contend the Court lacks personal jurisdiction over them as well as a defense motion to strike a report of the National Transportation Safety Board ("NTSB") that Plaintiffs attached to their brief opposing the motion to dismiss. In addition to Plaintiffs, one defendant/cross-claimant also opposes the motion to dismiss.

### BACKGROUND

**The Parties**

Plaintiff Paul Seegar was injured in an airplane accident that occurred on November 17, 2011 in Ulysses, Pennsylvania. (C.A. No. 13-2030 D.I. 9 at 1-2)[1] At the time of the accident,

---

[1]Unless otherwise noted, all references to the docket are to C.A. No. 13-2030, the first of the two related removed actions.

1

Mr. Seegar was employed by Applied Fabrics Tech, Inc. ("AFTI"), a New York corporation, and he was traveling on the airplane to conduct business for AFTI in Delaware. (D.I. 9 Ex. 3 at ¶2) Plaintiff Jennifer Seegar is Paul Seegar's spouse. (D.I. 8 Ex. B at ¶10) Plaintiffs are citizens of New York. (D.I. 8 Ex. A)

It was at the direction of Defendant Peter Lane that Plaintiff Paul Seegar engaged in the business travel during which the accident occurred. (D.I. 9 Ex. 3 at ¶¶2-5) Mr. Lane, a New York resident, is president of AFTI; Mr. Lane is also CEO of Defendant EKL Leasing Corp.,[2] which is alleged to be the owner/operator of the airplane involved in the accident. (*See* D.I. 8 Ex. E; D.I. 9 Exs. 1, 2, 3, 4) EKL Leasing Corp., a New York corporation, is the FAA-registered owner of the airplane. (D.I. 8 Ex. C)

Defendant Thomas P. Anticola, also a New York resident, piloted the airplane. (D.I. 8 Ex. F; D.I.9 Ex. 4 at 3)

For ease of reference, in the remainder of this Memorandum Order the Court will refer collectively to Lane, EKL Leasing Corp., and Anticola as the "New York Defendants."

Aero Ways, Inc., a Delaware corporation (hereinafter, the "Delaware Defendant"), is a commercial fueler and fixed-based operator which does business at New Castle County Airport in Delaware. (D.I. 10 at 2)

**The Complaint**

Plaintiffs originally filed suit in the Superior Court in and for New Castle County, Delaware on November 13, 2013. According to the Complaint, on November 17, 2011 Plaintiff Paul Seegar was a passenger on a twin-engine Hawker Beechcraft model 95-C55 aircraft,

---

[2] While the Complaint caption indicates that Plaintiffs are suing (*inter alia*) "EKL LEASING CORP. and/or EKL LEASING, INC.," the parties' briefs reference EKL Leasing Corp. and it is unclear whether any party to the case believes a separate entity known as EKL Leasing, Inc. actually exists.

registration number N54552, piloted by Defendant Anticola, as the agent of Defendants EKL Leasing Corp. and Peter Lane. (D.I. 8 Ex.2 at ¶¶ 1, 3)

The Complaint alleges that the New York Defendants acted negligently, by, among other things, operating the airplane when they knew or should have known that a fuel quantity gauge was faulty; performing an incomplete pre-flight inspection; operating the airplane without sufficient fuel to reach its intended destination; and improperly configuring the fuel system during remedial actions during the airplane's descent. (D.I. 8 Ex.2 at ¶2) The Complaint further alleges that the Delaware Defendant improperly refueled and inadequately inspected the airplane prior to its departure from New Castle County, Delaware. (D.I. 8 Ex.2 at ¶7; *see also* D.I. 9 at 2 ("The plane was inadequately refueled and, as a result, the plan crashed in Ulysses, Pennsylvania because of fuel starvation and the pilot's incomplete pre-flight inspection and operation of the plane with a known faulty fuel quantity indicating system . . . ."))

According to the Complaint, as a result of all Defendants' negligent conduct, the airplane crashed in Ulysses, Pennsylvania while en route from New Castle County, Delaware to Buffalo, New York. (D.I. 8 Ex. 2 at ¶¶1- 9) Plaintiff Paul Seegar suffered extensive personal injuries, mental distress, and financial damages. (D.I. 8 Ex.2 at ¶9) Plaintiff Jennifer Seegar suffered a loss of her husband's consortium. (*Id.* ¶10)

**Defendants' Responses**

On December 13, 2013, the New York Defendants removed the action against them to the United States District Court for the District of Delaware. (D.I. 1) Also on December 13, 2013, the Delaware Defendant separately removed the action against it. (C.A. No. 13-2031 D.I. 1)

3

On December 19, 2013, the Delaware Defendant filed an answer and crossclaim for indemnity and contribution against the New York Defendants. (D.I. 5) Thereafter, on January 10, 2014, the New York Defendants moved for dismissal of all claims and crossclaims pursuant to F.R.C.P. 12(b)(2) for lack of personal jurisdiction. (D.I. 7) After Plaintiffs filed their opposition briefs, the New York Defendants moved to strike the NTSB report Plaintiffs had attached to their briefs. (*See* D.I. 9 Ex. 4)

## LEGAL STANDARDS

**Motion to Dismiss under F.R.C.P. 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant. Determining the existence of personal jurisdiction generally requires a two-part analysis. First, the Court analyzes the long-arm statute of the state in which the Court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the Court must determine whether exercising jurisdiction over the defendant in this state comports with the Due Process Clause of the Constitution. *See id.* Due Process is satisfied if the Court finds the existence of "minimum contacts" between the nonresident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, by a preponderance of the evidence and with reasonable particularity, the existence of sufficient minimum contacts between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). To meet this burden,

the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share*, 735 F.2d at 67 n.9; *see also Philips Elec. N. Am. Corp. v. Contec Corp.*, 2004 WL 503602, at *3 (D. Del. Mar. 11, 2004) ("After discovery has begun, the plaintiff must sustain [its] burden by establishing jurisdictional facts through sworn affidavits or other competent evidence."). If no evidentiary hearing has been held, a plaintiff "need only establish a *prima facie* case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a *prima facie* case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). In considering a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "courts may rely upon matter outside the pleadings in determining jurisdictional facts." *Water & Sand Int'l Capital, Ltd. v. Capacitive Deionization Tech. Sys., Inc.*, 563 F. Supp.2d 278, 282 (D.D.C. 2008). A court is free to revisit the issue of personal jurisdiction if it is later revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

**Motion to Strike NTSB Report**

The admissibility of NTSB reports relating to accidents is governed by 49 U.S.C. §1154(b), which states "[n]o part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." A "report of the Board" is defined in 49 C.F.R.

§835.2 as "the report containing the Board's determinations, including the probable cause of an accident, issued either as a narrative report or in a computer format ('briefs' of accidents)." Factual accident reports, which are "report[s] containing the results of the investigator's investigation of the accident," are not "report[s] of the Board" and are admissible in litigation. *Id.*; *see also Chiron Corp. v. Nat'l Transp. Safety Brd.*, 198 F.3d 935, 940-41 (D.C. Cir. 1999).

## DISCUSSION

### New York Defendants' Motion to Strike NTSB Report

The Court considers first the New York Defendants' motion to strike the NTSB report. The New York Defendants ask the Court strike Plaintiffs' exhibits containing the NTSB Probable Cause report (D.I. 9 Ex.4) and the NTSB Brief of the Accident (D.I. 9 Ex. 5) pursuant to 49 U.S.C. §1154(b) and 49 C.F.R. §835.2 (D.I. 14 at 4-5). The New York Defendants contend that all of Plaintiffs' use of these exhibits is prohibited by law.

Plaintiffs state that the purpose of their citation to these exhibits is to support their allegations against Defendant Lane and Defendant EKL Leasing Corp. as to the ownership of the airplane and the business purpose of the flight. (D.I. 15 at 1, 3) Plaintiffs argue that the statute does not prohibit use of the reports to establish these limited facts and cite several cases in support of the admissibility of the factual content of NTSB accident reports. (D.I. 15 at 2)

Plaintiffs' Exhibit 4 (D.I. 9 Ex. 4) consists of two distinct sections: (1) pages 2 through 10, which contain the Pilot/Operator Accident/Incident Report, which is a form containing facts and a statement by the pilot about the airplane and accident, which was provided to the NTSB investigator on November 21, 2011, four days after the accident; and (2) pages 11 through 14, which contain the NTSB Probable Cause report, which shows an "Approval Date" of August 7, 2012. (D.I. 9 Ex. 4 at 11) Additionally, Plaintiffs' Exhibit 5 (D.I. 9 Ex. 5) consists of three

6

distinct sections: (3) pages 1 through 7 contain the NTSB Factual Report; (4) pages 8 through 10 contain the NTSB Brief of the Accident; and (5) page 11 contains a brief statement from an employee of the Delaware Defendant. Some of these sections are admissible while others are not.

The NTSB Probable Cause report (#2 above; *see also* D.I. 9 Ex. 4 at 11-14) and the Brief of the Accident (#4 above; *see also* D.I. 9 Ex. 5 at 8-10) may not be used in this litigation, as such use is expressly barred by 49 U.S.C. §1154(b), as clarified by 49 C.F.R. §835.2. The Court **GRANTS** the New York Defendants' motion to strike to the extent that these portions of the NTSB reports are **STRICKEN**.

The Pilot Accident Report (#1 above; *see also* D.I. 9 Ex. 4 at 2-10), the Factual Report (#3 above; *see also* D.I. 9 Ex. 5 at 1-7), and the statement of the employee of the Delaware Defendant (#5 above), all consisting of facts gathered by the NTSB accident investigator, may be considered by the Court in weighing arguments for personal jurisdiction over the New York Defendants. *See Chiron Corp.*, 198 F.3d, 940-41. Relying on these documents as evidence in this litigation is not inconsistent with the statute or regulation. The Court **DENIES** the motion to strike with respect to these portions of the record.

**New York Defendants' Motion to Dismiss**

The New York Defendants assert that they are not subject to personal jurisdiction in the District of Delaware because none of the sections of Delaware's long-arm statute are applicable here. (D.I. 8 at 6) Specifically, the New York Defendants contend – and on this point the Plaintiffs do not disagree – that Del. C. Ann. tit. 10 §§3104(c)(3), (5), and (6) are inapplicable, as there is no tort alleged against to have been committed by the New York Defendants in Delaware, these Defendants do not own or use real property in Delaware, and Plaintiffs' claims

do not involve any contract for insurance with these Defendants. (*See* D.I. 8 Exs. D, E, F) The New York Defendants also argue that specific jurisdiction cannot be exercised as to them under §3104(c)(2), because they did not contract to supply goods or services in Delaware. (*See* D.I. 8 at 6) They also assert that they did not "transact business" within Delaware – because a single use of a Delaware airport is a contact too attenuated to support the exercise of jurisdiction – so specific jurisdiction does not arise under §3104(c)(1). Finally, the New York Defendants deny having contacts with Delaware sufficient to support the exercise of general jurisdiction, as none of them "regularly does business" in Delaware. (D.I. 8 at 8-9)

Plaintiffs counter that the New York Defendants may be subject to general jurisdiction in Delaware due to the regular business activities of Defendant Lane's company, AFTI. (D.I. 9 at 7-8) Plaintiffs further allege that the Court may exercise specific jurisdiction, under § 3104(c)(1) or (2) or both, over all three New York Defendants, as follows: (i) over Anticola as pilot of the airplane and agent of Lane and EKL Leasing Corp.; (ii) over EKL Leasing Corp. as owner/operator of the airplane and principal of Anticola; and (iii) over Lane, as principal of EKL Leasing Corp. and Anticola, and as owner/operator of the airplane. (D.I. 9 at 7-10) Specifically, Plaintiffs allege that Lane directed EKL/Anticola to transport Mr. Seegar to and from Delaware to conduct business for Lane/AFTI and, in the process, EKL/Anticola, as agents of Lane, used and paid fees to the New Castle County Airport (D.I. 9 Ex. 9, 10), purchased aviation fuel, and contracted for the use of a rental car at New Castle County Airport through the Delaware Defendant Aero Ways, Inc.

Aero Ways, Inc., the Delaware Defendant, joins Plaintiffs in opposing the New York Defendants' motion to dismiss. Among other things, the Delaware Defendant argues that this Court may exercise specific jurisdiction over the New York Defendants, as the purchase of fuel

8

in Delaware and utilization of the New Castle County Airport constitute a "transaction" under §3104(c)(1). (D.I. 10 at 4)

The Court agrees with Plaintiffs that the refueling stop at New Castle County Airport provides sufficient minimum contacts in this case to permit the Court to exercise personal jurisdiction over the airplane's pilot and owners. For this proposition, Plaintiffs persuasively rely on *Nezan v. Aries Techs., Inc.*, 704 S.E.2d 631, 641 (W. Va. Supr. 2010). *Nezan* involved an airplane en route from Buffalo, New York to Florida. When the Canadian pilot encountered adverse weather, he elected to land at an airport in West Virginia. After refueling there, the pilot – who was not certified with an instrument rating – filed an instrument flight rules plan and departed for Florida. The airplane encountered more adverse weather, developed airframe icing, and crashed in Virginia, killing the pilot and passenger. The passenger's estate filed suit in West Virginia for wrongful death.

The West Virginia Supreme Court found the exercise of personal jurisdiction over the Canadian owner of the airplane to be proper. In doing so, the Court cited as sufficient contacts with the state the use of the West Virginia airport and the pilot's allegedly negligent decisions that were made in West Virginia. *See Nezan*, 704 S.E.2d at 641 ("Although [the pilot] was in West Virginia for less than a day, what transpired in that time resulted in sufficient minimum contacts."). Despite its unplanned nature, the stop in West Virginia was found by the Court to be a purposeful availment of that state's airport facilities. *See id.* On this reasoning, Anticola's planned refueling stop at the New Castle County airport is an even stronger manifestation of purposeful availment.[3]

---

[3]Thus, the Court disagrees with the New York Defendants' contention that "the preflighting, fueling, and departure of the aircraft were incidental to the location of the activities and not purposeful availment of the forum." (D.I. 12 at 4)

9

Under the Delaware long-arm statute, the Court "may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent . . . [t]ransacts any business or performs any character of work or service in the State." Del. C. Ann. tit. 10 §3104(c)(1). Specific personal jurisdiction may arise from a single transaction, if there is a nexus between that transaction and the claim at issue. *See Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992). Here, the New York Defendants' actions in Delaware – directly, by Anticola, or indirectly through him, by Lane and EKL – including the purchase of aviation fuel and use of ground services at New Castle County Airport, are transactions related directly to the negligence alleged in pre-flight activities taking place in Delaware (including the disregard of a fuel indicator gauge known to be malfunctioning). While the New York Defendants are correct that "the manifestation of Anticola's alleged negligence in operating the aircraft and subsequent accident occurred in Pennsylvania" (D.I. 8 at 8), the alleged negligence that occurred on the ground in Delaware (along with the purchase of fuel and services in Delaware) establish a sufficient nexus between Plaintiffs' claims and the transactions that occurred here. Consistent with the West Virginia Supreme Court's analysis in *Nezan*, all of this together is sufficient to establish Plaintiffs' prima facie case supporting this Court's exercise of specific jurisdiction over the New York Defendants.[4]

The Court further finds that this exercise of personal jurisdiction over the New York Defendants is not inconsistent with Due Process. The activities these Defendants directed at

---

[4]The Court agrees with the New York Defendants that it lacks general personal jurisdiction over them. (*See, e.g.*. C.A. No. 13-2030 D.I. 8 at 2 ("EKL is not licensed to do business in Delaware, does not maintain an office in the State, does not solicit business from Delaware, does not own any assets that are located in Delaware, does not lease or own real property in the State, and derives no revenue from Delaware. The individual Moving Defendants, Lane and Anticola, likewise lack any continuous and systematic relationship with Delaware."))

Delaware – flying into and out of the state, undertaking a planned refueling stop in the state, allegedly conducting a negligent pre-flight inspection in the state – constitute sufficient "minimum contacts" with Delaware, such that the maintenance of a suit arising directly from these activities (i.e., an airplane crash occurring shortly after the purchase of fuel and a deficient pre-flight inspection) does not offend traditional notions of fair play and substantial justice. Additionally, in weighing the fairness of its exercise of jurisdiction over these Defendants, the Court has considered other factors, none of which are decisive. While it is less convenient for the New York Defendants to travel to Delaware than to mount their defense in their home state of New York, the same is true for the Plaintiffs, who are also residents of New York. Delaware has an interest in the promotion and enforcement of aviation safety, notwithstanding federal preemption. The judicial system's interest in an efficient resolution of the controversy favors the case remaining in Delaware, as the Court has unchallenged jurisdiction over the Delaware Defendant, and litigation – relating, in part, to what occurred on the ground at New Castle County airport – against the Delaware Defendant will occur in this Court, so maintaining a separate suit in New York against the New York Defendants could essentially double the amount of judicial resources devoted to this controversy.[5]

In short, under the circumstances – where an airplane, having an allegedly faulty fuel indicator, departs from Delaware after having refueled there, and soon thereafter crashes in Pennsylvania – the New York Defendants should reasonably expect they could be haled into a court in Delaware. *See generally Asahi Metal Indus. Co. Ltd. v. Superior Court*, 480 U.S. 102, 108-09 (1987).

---

[5]The New York Defendants assert "there is already related litigation pending in New York over this accident" (D.I. 8 at 13) but provide no information about this litigation.

## CONCLUSION

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED THAT:**

1. The New York Defendants' motion to dismiss (C.A. No. 13-2030 D.I. 7; C.A. No. 13-2031 D.I. 10) is **DENIED**.

2. The New York Defendants' motion to strike (C.A. No. 13-2030 D.I. 13; C.A. No. 13-2031 D.I. 4) is **GRANTED IN PART** and **DENIED IN PART**, as explained above.

3. The parties shall meet and confer and, no later than **March 26**, submit a proposed scheduling order.

March 12, 2015
Wilmington, Delaware

UNITED STATES DISTRICT COURT